UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LUBRILA FORD,

       Plaintiff,

                 **Hon. Hugh B. Scott**

      v.            12-CV-301A

                 **Report**
                 **and**
CAROLYN W. COLVIN[1], Acting     **Recommendation**
Commissioner of Social Security,

       Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 7 (plaintiff)[2] and 11 (defendant)[3]).

## **INTRODUCTION**

This is an action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that the plaintiff, Lubrila Ford ("Ford"), is not disabled and, therefore, is not entitled to disability insurance benefits. (Dkt. No. 1, Compl.) Ford argues that the Commissioner erred in denying her disability benefits because,

---

[1] On February 14, 2013, Carolyn W. Colvin replaced Michael J. Astrue as Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Colvin substitutes automatically as the defendant in her official capacity. The Clerk of the Court is directed to change the caption of this case accordingly.

[2] In support of her motion, plaintiff submits her memorandum of law, Dkt. No. 7 and her reply memorandum to defendant's motion, Dkt. No. 14. In opposition is defendant's cross motion for judgment on the pleadings, Dkt. No. 11 and the defendant Commissioner's reply memorandum to plaintiff's motion, Dkt. No. 13.

[3] In support of his motion, Dkt. No. 11, defendant submits the administrative record (manually filed June 15, 2012); his memorandum in support, Dkt. No. 12; and his reply memorandum to plaintiff's motion, Dkt. No. 13. In opposition, plaintiff submits her motion and moving papers discussed above, Dkt. Nos. 7, 14.

inter alia, the administrative law judge ("ALJ") did not properly assess her residual functional capacity ("RFC") when he failed to base his RFC determination on the opinion of any medical expert. (Dkt. No. 7, Pl. Mem. at 8-12.) The Commissioner responds by arguing that the ALJ based the RFC determination on the objective medical evidence in the record and that, although the ALJ's decision did not expressly refer to any medical opinion, much of the medical source statements submitted by Ford's treating physicians and by the consultative examiner supported the ALJ's RFC determination. (Dkt. No. 12.)

For the reasons below, the Court respectfully recommends granting Ford's motion in part. The Court recommends vacating the Commissioner's final decision and remanding for further proceedings consistent with this Report and Recommendation, and recommends denying Ford's motion (Dkt. No. 7) to the extent that it seeks any other relief. The Court further recommends denying the Commissioner's motion (Dkt. No. 11) in its entirety.

## **PROCEDURAL BACKGROUND**

Ford filed an application for disability insurance benefits on October 24, 2008. That application was denied initially and on reconsideration. Ford appeared before ALJ Timothy McGuan, who considered the case de novo and concluded, in a written decision dated October 19, 2010, that Ford was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on February 16, 2012, when the Appeals Council denied Ford's request for review, thereby exhausting her administrative remedies.

Ford commenced this action on April 11, 2012. (Dkt. 1, Compl.) The parties moved for judgment on the pleadings. (Dkt. Nos. 7, 11.) The motions were submitted on papers on November 8, 2012. (Dkt. No. 17.)

## FACTUAL BACKGROUND

Ford claims ALJ McGuan erred when he found that she was not disabled. (Dkt. No. 7, Pl. Mem. at 1.) On the day of the ALJ's decision, Ford was 29 years of age (R. 104), had a tenth grade education (R. 127), and had worked mostly as a certified nursing assistant (CNA) from 1997 to March 2007. (R. 122.) She lost her last light industrial job because, as she reported, she was unable to get along with someone. (R. 152.) Ford broke her ankle in August of 2007 and claims that she has been unable to work since that time due to ongoing post-surgery pain and stiffness. (R. 192.) She also claims disability due to a back injury sustained in 2004; asthma; hypertension; and obesity. She claims further that the pain medications that she takes for her back and ankle pain make her too sleepy to work. (R. 31-36, 121.)

Ford also reported that she can take care of her children, tend to her own personal needs and grooming, prepare meals once or twice a week, and travel alone by car two or three times a week to do her shopping and banking and to go to church. (R. 131-34.) Ford reported that she needs help with the laundry and cleaning. (R. 132.) During her testimony at the hearing before the Administrative Law Judge, Ford stated that she could stand for 45 minutes at time and sit for 45 minutes at a time and that she had to elevate her leg 45 minutes to an hour at a time with ice packs three times a day. (R. 31-34.) She also testified that she could walk a block at a reasonable pace (R. 34) and later reported to the physician's assistant at her surgeon's office that she experienced ankle pain and swelling after "long walking." (R. 267.)

## MEDICAL AND VOCATIONAL EVIDENCE

*ALJ's Assessment of Plaintiff's Impairments*

ALJ McGuan conducted an Oral Hearing on October 19, 2010 during which he heard the testimony of both Ms. Ford and the Vocation Expert ("VE"), Timothy Janokowski. Taking into

consideration the testimony taken at the Hearing and the medical evidence in the record, ALJ McGuan found that Ford's severe impairments included "ankle fracture status post open reduction internal fixation and surgical removal of hardware and obesity" causing "significant limitations in the claimant's ability to perform basic work activities." (R. 14.) The ALJ further found that Ford suffered impairments that were not severe, including hypertension, asthma and low back pain, because these impairments did not result in significant limitations in her ability to perform basic work activities. (Id.) The ALJ determined that none of Ford's impairments or combinations of impairments met any of the listings in 20 C.F.R. § (P) Appendix 1, including listing 1.02(A). (R. 15.) ALJ McGuan noted that the clinical signs, symptoms and functional limitations, even in consideration of Ford's obesity, were not of the required severity to meet the listing because Ford does not use any assistive device and she is able to ambulate effectively. (Id.)

*ALJ's Assessment of Plaintiff's Residual Functional Capacity*

Having determined that Ford's impairments did not meet the listed impairments, ALJ McGuan then turned to the medical record to evaluate Ford's RFC and concluded that she could perform light duty work with a sit/stand option to accommodate her ankle pain and obesity. To evaluate the RFC, the ALJ addressed Ford's credibility, applying a two-step process. He first took Ford's subjective symptoms into consideration and then applied the objective medical evidence to determine whether she was credible in reporting her symptoms and the resulting functional limitations. (Id.) Although the claimant reported during the consultative examination in February of 2009 that she experiences low back pain radiating down both legs, causing numbness and tingling in both legs (R. 260-65), the record from her treating physicians shows that she denied any radiating pain or numbness. (R. 240.) Ford testified during the Hearing that

she experiences her "disk shifting," but there is no medical evidence of a back impairment and the record shows at one point that she described her back pain as "intermittent." (R. 18.) She also reported that her pain medication caused the side effect of sleepiness, making it difficult for her to work. (R. 260-265.) There is no evidence in the record that Ford complained of this side effect to any of the treating physicians who prescribed the pain medication. (R. 18.)

ALJ McGuan also noted that, although Ford claims her ankle pain is disabling, she also reported to her doctors that the pain occurred after "long walking" and that she exercised every day, which helped relieve her symptoms. (R. 18, 267.) In addition to these inconsistencies, the ALJ noted that Ford failed to show up or cancelled all but six of the 20 scheduled physical therapy sessions after her first surgery (R. 17, 243-52) and declined the recommended physical therapy after her second surgery due to her "schedule." (R. 17, 231, 233.) She was encouraged by her surgeon and his physician's assistant to resume her normal activities and was told that exercise would help her continue to improve. (R. 217, 231.) Because he found that Ford's testimony regarding the intensity, persistence and limiting effects of her symptoms and limitations was inconsistent with the objective medical evidence, the ALJ found that her statements were not credible "to the extent they are inconsistent with the above residual functional capacity assessment" (R. 18.) To support his conclusion regarding Ford's credibility, the ALJ also noted that she did not receive "the type of medical treatment one would expect for a totally disabled individual," she was not compliant with treatment recommendations, and that her medications, which he claims were not suggestive of an impairment more limiting than found in his decision, were effective at controlling her symptoms. (Id.) ALJ McGuan further noted that Ford had stopped working for reasons not related to her impairments. (Id.)

Having concluded that Ford's statements regarding her limitations were not credible, ALJ McGuan turned to the opinion evidence to determine the weight he would give each doctor's statements regarding Ford's limitations. He gave limited weight to the statements of the consultative examiner ("CE"), Dr. Bender because the CE evaluated her on only one occasion and had no treatment relationship with her (R. 19.) Dr. Bender said that Ford had moderate limitations for climbing, walking, lifting large items and standing for prolonged periods. She did not impose a limitation involving elevating the leg. (Id., R. 260-265.) The ALJ gave no weight to the statements of Ford's treating physicians because "they did not provide objective evidence to substantiate the limitations they imposed." (R. 19.)

Dr. Stoekl, the surgeon who twice performed surgery on Ford's ankle, stated in pertinent part that Ford would need to elevate her leg occasionally in a work day. (R 331.) Dr. Stoekl also circled "yes" to the question, "Is the patient able to walk a block at a reasonable pace on rough or uneven surface, able to walk enough to shop or bank, able to climb a few steps at a reasonable pace with the use of a single handrail?" (Id.) He then wrote out, "Yes, may walk to shop and bank" and "Yes, able to climb steps with one handrail." (Id.) It is unclear whether he neglected to write out "Yes, walk a block" to indicate she could not walk a block at a reasonable pace or for some other reason. ALJ McGuan took his answer to mean that she could perform all three functions. (R. 19.) Ford's primary care physician, Dr. Calabrese, stated in pertinent part that she did not need to elevate her leg in a work day. (R. 326-328.) He also indicated that she could not work any hours in a day, but she could stand or sit two hours at a time for a total of two hours in a standing position in any work day, and two hours in a sitting position in any work day. (Id.)

In determining Ford's RFC, ALJ McGuan dismissed Ford's statements as not credible. (R. 15). He then considered the opinions of her treating physicians and gave them no weight

because they failed to provide objective medical evidence for the limitations they imposed. (R. 18). He afforded limited weight to the opinion of the CE, who imposed some moderate limitations. (Id.) Finally, the ALJ stated that in determining Ford's RFC, he had given the greatest weight to the objective evidence of record. (R. 19.) ALJ McGuan did not explain how the medical evidence was applied to determine the RFC, nor did he provide a function-by-function analysis of Ford's work-related capabilities. It is unclear what evidence or opinion he used in imposing a sit-stand limitation to Ford's RFC.

*ALJ's Assessment of Plaintiff's Ability to Work*

ALJ McGuan then considered the testimony of the VE and concluded that there were sufficient jobs in the regional economy and that Ford was not disabled. (R. 20.) When the ALJ questioned the VE at the hearing, he focused specifically on the sit-stand limitation he had added to Ford's light duty RFC. (Id.) The VE testified that, given Ford's RFC, her age, education and work experience, the sit-stand limitation would not preclude her from obtaining gainful employment at such jobs as bench assembler, office helper, final assembler or dowel inspector and that there were sufficient jobs in these occupations in the regional economy in which she lives. (Id., R. 47-49.)

In his decision, ALJ McGuan did not address the portion of the VE's testimony in which he was asked whether adding the requirement of elevating her leg for one hour during the work day would preclude plaintiff from obtaining employment. When asked this question, the VE replied,

> That would eliminate the jobs identified in hypothetical one and two, and in fact I think it's inconsistent with all unskilled, entry-level employment and that this would require the person to remove themself [phonetic] from the work environment – to take a break. And if they needed to do that on a regular basis of more than once a month, about 12 times a year, then that's grounds for them being fired. So they might be able to get a job, but wouldn't be able to keep the job. (R. 50.)

7

This question was asked by the attorney for the plaintiff during the hearing and was based on the limitation imposed in Dr. Stoekl's Medical Statement dated May 6, 2009 in which he indicated that Ford would have to elevate her leg occasionally during a work day. (R. 331.) The ALJ had given no weight to this statement and did not include this portion of the VE's testimony in his analysis of the Ford's ability to work.

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not disabled is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

A plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past. 20 C.F.R. §§ 404.1520(e) &

416.920(e). In making an RFC assessment, the ALJ must identify the individual's functional limitations and "assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, 1; see also 20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)-(d). In doing so, the ALJ considers all of the relevant evidence in the record, "including the claimant's physical abilities, mental abilities, and symptoms, pain and other limitations which could interfere with work activities on a regular and continuing basis." 20 C.F.R. § 404.1545.

When a plaintiff was not working at the time of the onset of the alleged disability, the ALJ must determine whether the plaintiff's impairments prevent the plaintiff from performing any gainful employment for which she is suited based on age, education and work experience, then provide evidence that demonstrates that other work exists in significant numbers in the national economy that the plaintiff can do. 20 C.F.R. §§ 416.912(g) & 416.960(c).

*Application*

Here, Ford does not contest the ALJ's findings at steps one and two that she was not currently working and that her severe impairments included an ankle fracture status post open reduction internal fixation and surgical removal of hardware and obesity. (R. 14.) Ford argues that the ALJ erred at steps three and four when he found that her impairments did not meet listing 1.02 (Dkt. No. 7, Pl. Mem. at 8-12), when he did not apply the appropriate legal standard in assessing Ford's credibility (id. at 12-15), and when his RFC finding was not supported by substantial evidence (id. at 15-17.) Ford further contends that the Commissioner has not met her burden at step five because the vocational expert's testimony could not provide substantial evidence to support the denial of benefits. (Id. at 17-18.)

The Commissioner maintains that substantial evidence supports the Commissioner's Final Decision. (Dkt. No. 12, Def. Mem. in Support at 14.) She reiterates that at step three ALJ McGuan concluded that Ford's impairments did not meet or equal the criteria of any listed impairment without further comment or analysis. (Id. at 17.) At step four, the Commissioner points to the objective medical evidence and clinical evidence in the record to support the ALJ's RFC determination. (Id. at 18-20.) She notes that, although ALJ McGuan did not specifically point to the statements of the treating physicians or the CE, many of their opinions actually also support the ALJ's RFC determination. (Id.) The Commissioner also argues that the medical evidence supports the weight afforded to each medical opinion by the ALJ as well as the ALJ's conclusion that Ford's statements regarding her symptoms were "not entirely credible." (Id. at 21-23.) Finally, the Commissioner concludes that ALJ McGuan properly found that Ford was not disabled at step five because the VE testified that an individual limited to light work with a sit-stand option could perform work that existed in sufficient numbers in the national economy. (Id. at 23-24.) The Commissioner found that the ALJ had properly disregarded Dr. Stoekl's opinion that Ford would need to elevate her leg occasionally during a work day (id. at 21) and did not address this issue at step five of the analysis.

## I. Plaintiff's Impairments Do Not Meet Listing 1.02 Major Dysfunction of a Joint

Ford argues that ALJ McGuan should have found that her impairments meet Listing 1.02 (Major Dysfunction of a Joint) or, alternatively, should have further developed the record by contacting Dr. Stoekl to clarify the ambiguity in his statement regarding Ford's ability to walk a block at a reasonable pace. (Pl. Mem. at 9.) The Commissioner replies, and this Court concurs,

that the ALJ properly found that Ford's impairments do not meet the definition of Listing 1.02. (Dkt. No. 12, Def. Mem. at 17.)

Listing 1.02 Major Dysfunction of a Joint involves gross anatomical deformity <u>and</u> chronic joint pain and stiffness <u>with</u> signs of limitation of motion or other abnormal motion of the affected joint(s), <u>and</u> findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint(s). 20 C.F.R. §404, Subpt. P, Appendix 1, § 1.02 [emphasis added]. Specifically, § 1.02(A), which refers to a weight bearing joint such as an ankle, requires that the impairment result in "inability to ambulate effectively." 20 C.F.R. §404, Subpt. P, Appendix 1, § 1.02(A). When the claimant also suffers from obesity, this may be considered an aggravating factor which can substitute for a gross deformity if it affects the claimant's ability to ambulate effectively. <u>Skarbek v. Barnhart</u>, 390 F.3d 500 (7th Cir. 2004).

In this case, the record shows that Ford's impairment does not involve a deformity and there are no findings of a joint space narrowing, bony destruction or ankylosis of the affected joint. (R. 230-234, 240, 330-331.) Although Ford's severe impairments include obesity (R. 14), her own statements and the medical evidence indicate that she can nonetheless ambulate effectively (R. 18, 31-34, 231, 261, 269, 340.) The evidence regarding her ability to ambulate effectively is sufficient to obviate the requirement to further develop the record in regard to Dr. Stoekl's ambiguous response as to whether Ford could walk a block at a reasonable pace. <u>Sow v. Astrue</u>, No. 11-CV-6264, 2012 U.S. Dist. LEXIS 102979 (W.D.N.Y. July 24, 2012) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional

information in advance of rejecting a benefits claim," quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).)

## II. The ALJ Applied the Appropriate Legal Standard in Assessing Plaintiff's Credibility

Ford argues that ALJ McGuan concluded that her statements were not credible because they were inconsistent with the ALJ's RFC determination and that this constitutes legal error. (Dkt. No. 7, Pl. Mem. at 12-15.) After pointing out various inconsistencies between Ford's testimony during the Hearing and the objective medical and clinical record, ALJ McGuan concluded that Ford's symptoms were not credible "to the extent they are inconsistent with the above residual functional capacity assessment." (R. 16-18.) The ALJ's conclusion indicates the degree to which Ford's symptoms were not credible rather than the basis upon which the conclusion was drawn. The credibility of Ford's reported symptoms were properly based on the entire record as required by the Social Security regulations and were as such not erroneous. Riley v. Astrue, No. 11-CV-6512T, 2012 U.S. Dist. LEXIS 159113, at *17-19 (W.D.N.Y. Nov. 6, 2012) (quoting SSR 96-7p and stating that the ALJ's conclusion that Ford's statements were "not credible to the extent that they were inconsistent with the RFC" was not erroneous as long as the assessment of Ford's credibility was made after considering the entire record.)

## III. The RFC Finding is Incomplete

Next, Ford contends that the ALJ's RFC is not supported by substantial evidence because ALJ McGuan disregarded the treating physicians' conclusions that Ford could not work and because he did not evaluate Ford's ability to perform work on a regular and continuing basis. (Dkt. No. 7, Pl. Mem. at 15-16.) The Commissioner argues that ALJ McGuan based his RFC

determination on the objective medical and clinical evidence in the record and that the RFC is supported by many of the statements of the treating physicians and the CE. (Dkt. No. 12, Def. Mem. at 18-20.)

A residual functional capacity assessment is a medical determination. Ubiles v. Astrue, No. 11-CV-6340, 2012 U.S. Dist. LEXIS 100826, at *35 (W.D.N.Y. July 2, 2012), citing Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp.2d 347 (E.D.N.Y. 2010). Because the ALJ is not a medical expert, he is generally required to afford controlling weight to a claimant's treating physicians. 20 CFR § 404.1527(d). When an ALJ does not give controlling weight to the treating physician's opinions, he is required to give "good reasons" for the weight afforded each medical opinion. 20 C.F.R. § 416.927(d)(2). When he is not relying on a medical opinion for his RFC determination, the ALJ is further required to provide a function-by-function analysis of Ford's work-related capacity. Matejka v. Barnhart, 386 F. Supp.2d 198, 208 (W.D.N.Y. 2005). When the ALJ fails to do so, his RFC determination is not supported by substantial evidence. Id.

In the instant case, ALJ McGuan gave no weight to the treating physicians' opinions in their Medical Statement of May 2009, and limited weight to the opinion of the consultative examiner. (R. 19.) His reason for the weight afforded the opinions of the treating physicians was that neither doctor provided evidence to support the limitations he imposed. (Id.) His reason for the weight afforded the opinion of the CE was that she had examined Ford just once. (Id.) In the absence of a controlling medical opinion, ALJ McGuan should have provided a function-by-function analysis of Ford's work-related capacity, most significantly whether she would need to elevate her leg during a work day. Because he did not do so, his RFC determination is incomplete. Therefore, this matter should be **remanded** for further proceedings.

The Commissioner attempts to fill in the gaps in the ALJ's RFC determination, pointing to the objective medical and clinical evidence in the record and indicating medical opinions in the record that support the RFC. (R. 18-23.) However, an explanation by the Commissioner is not an adequate substitute for properly-executed RFC assessment provided by ALJ McGuan in his decision. Holcomb v. Barnhart, No. 05-CV-6435CJS, 2006 U.S. Dist. LEXIS 52090, at *11-12 (W.D.N.Y. May 26, 2006). Without the requisite function-by-function analysis, this Court is unable to determine whether the RFC is based on substantial evidence. It is also recommended that the Commissioner provide a more thorough treatment of the ALJ's reasoning for the weight afforded to the medical opinions and an explanation of the relevance of the RFC assessment signed by a J. Cumbo that was not included in the analysis. (R. 310-315.)

## IV. The VE's Testimony Should be Reviewed Upon Completion of the RFC Assessment

The ALJ's reliance on the vocational expert's testimony in determining whether there are sufficient jobs in the regional and national economy that Ford could perform is insufficient without further development of the record regarding Ford's RFC. Ford argues that Dr. Stoekl's finding that she would need to elevate her leg occasionally throughout a work day should have been presented to the VE as one of Ford's work-related limitations. (Dkt. No. 7, Pl. Mem. at 17.) During the VE's testimony, when Ford added this hypothetical limitation to the hypothetical presented by the ALJ, the VE found that this limitation would preclude Ford from working. (R. 50-51.) The Commissioner responds that ALJ McGuan properly disregarded the opinion of Dr. Stoekl regarding Ford's need to elevate her leg because it was inconsistent with the other medical opinions in the record and because Dr. Stoekl himself "never recommended leg elevation to plaintiff during visits." (Dkt. No. 11, Def. Mem. at 20-21.)

An Administrative Law Judge may only rely on a vocational expert's testimony that includes the work-related limitations and capabilities specific to a particular claimant. Aubeuf v. Schweiker, 649 F. 2d 107, 114 (2d Cir. 1981) ("vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job."). When a hypothetical question omits an impairment or limitation, the VE's testimony does not constitute substantial evidence. Futia v. Astrue, No. 1:06-cv-0961 (NAM), 2009 WL 425657, at *9 (N.D.N.Y. Feb 19, 2009) ("If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."). When a report from a medical source contains a conflict or ambiguity that must be resolved in order to establish whether a claimant is disabled, the Commissioner is obligated to seek additional evidence or clarification from the medical source. Ayers v. Astrue, No. 08-CV-0069(A)(M), 2009 U.S. Dist. LEXIS 113748, at *28-29 (W.D.N.Y. Aug. 31, 2009) (citing 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)).

In this case, the VE's testimony regarding Ford's ability to obtain gainful employment based on her specific qualifications and impairments turns on the question of whether she would need to elevate her leg during a work day. If ALJ McGuan properly disregarded this limitation imposed by Dr. Stoekl, the VE's testimony provides substantial evidence that Ford is not disabled. While the evidence in the record seems to indicate that Ford's ankle is healing well (R. 330), she is able to return to her "normal activities" (R. 217) and weight-bearing exercise would be beneficial to her (id.), it is not clear whether she needs to continue to elevate her leg during a work day. The Commissioner's assertion that Dr. Stoekl did not recommend that Ford elevate her leg during office visits, but only imposed this limitation in the Medical Statement of May

2009, is incorrect. After the initial surgery to repair the broken ankle, Dr. Stoekl or his physician's assistant, Stefani Hagglund, recommended ice packs and elevation to alleviate Ford's pain and swelling. (R. 206, 212, 215.) After the surgery to remove the hardware in August of 2008, neither Dr. Stoekl nor his physician's assistant recommended that Ford elevate her leg as part of her treatment instructions during follow-up visits. (R. 217, 229, 231, 233.) This Court recommends that the Commissioner further develop the record in regard to the limitation imposed by Dr. Stoekl in his Medical Statement of May 2009 that Ford would need to elevate her leg occasionally during a work day. Having done so, the Commissioner will be able to complete the RFC determination and his step five-analysis of Ford's ability to work.

## CONCLUSION

For all of the above reasons, the Court respectfully recommends **granting** Ford's motion (Dkt. No. 7) in part. The Court recommends **vacating** the Commissioner's final decision and **remanding** for further proceedings consistent with this Report and Recommendation. In addition to any other matters that the Commissioner may deem appropriate, the further proceedings should clarify the expert medical opinion upon which the Administrative Law Judge based his RFC determination or, in the alternative, should provide a function-by-function analysis based on the medical evidence in the record of Ford's work-related capabilities.

The Court recommends **denying** Ford's motion (Dkt. No. 7) to the extent that it seeks any other relief. The Court further recommends **denying** the Commissioner's motion (Dkt. No. 11) in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

Any objections to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a). Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.

So Ordered.

                                                                   /s Hugh B. Scott

                                                                   Hon. Hugh B. Scott
                                                                   United States Magistrate Judge

Buffalo, New York
August 14, 2013